UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

JAMIE L. BARD,                         )
                                       )
       Plaintiff,             )
                                       )
v.                                     )     No. 1:09-cv-294-JAW
                                       )
SOCIAL SECURITY ADMINISTATION          )
COMMISSIONER,                          )
                                       )
       Defendant              )

REPORT AND RECOMMENDED DECISION

The Social Security Commissioner found that Jamie L. Bard, a young woman classified as having borderline intellectual functioning, has a residual functional capacity that enables her to perform jobs existing in significant numbers in the national economy and denied her application for supplemental security income under Title XVI of the Social Security Act.[1] Bard commenced this civil action for judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), alleging errors at Steps 2, 3, 4, and 5 of the sequential evaluation process and an absence of substantial evidence in support of the Administrative Law Judge's related findings. I recommend that the Court vacate and remand based on a Step 4 error in the residual functional capacity assessment that precludes a reliable Step 5 finding.

**Standard of Review**

The standard of review is whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. Richardson v. Perales, 402 U.S. 389, 401

---

[1] Bard waived her disability claim under Title II in the course of administrative proceedings by amending her onset date. (Claimant's Hr'g Mem. at 1, R. 197.)

(1971); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

**Discussion of Plaintiff's Statement of Errors**

Jamie Bard has not engaged in substantial gainful activity since May 10, 2007, her alleged date of disability onset, as amended, which satisfies her Step 1 burden. (Finding 2, R. 2.)

At Step 2, the Administrative Law Judge found that borderline intellectual functioning was the only severe impairment demonstrated in the record that would satisfy the applicable duration and continuity criteria. (Finding 3, R. 13.) A consulting/examining expert's psychological review diagnosed an Axis II disorder of borderline intellectual functioning. (Ex. 6F, R. 255-58.) A subsequent consulting expert's psychiatric review technique evaluated an organic mental disorder/language-based learning disability, and indicated that no severe impairment of that kind was present. (Ex. 7F, R. 260-61, 270.) Neither expert found evidence of a severe anxiety or affective disorder. Bard says it was error for the Administrative Law Judge to fail to find severe impairment associated with anxiety and depression. (Statement of Errors at 1-3.)

At Step 3, the Administrative Law Judge found that Bard did not meet the Mental Retardation Listing. (Finding 4, R. 18-19.) Bard faults this finding, relying on an IQ score in the record and her presentation related to the alleged failure to find a depressive disorder at Step 2, and she argues that Listing 12.05(C) is met. (Statement of Errors at 4-7.)

At Step 4, the Administrative Law Judge found that Bard could perform a full range of work at all exertion levels, subject to nonexertional limitations of simple routine (one- or two-

step), repetitive tasks, only simple decisions, few work place changes, and excluding a fast-paced production environment. (Finding 5, R. 20.) There is no issue as to ability to perform past relevant work, as the Administrative Law Judge found no past relevant gainful work exists. (Finding 6, R. 21.) Bard says the Administrative Law Judge's residual functional capacity finding is built on his lay assessment of raw data rather than substantial evidence. (Statement of Errors at 7-8.)

Finally, at Step 5, the Administrative Law Judge found, based on his residual functional capacity assessment and related testimony by a vocational expert, that jobs exist in the national economy that Bard can perform. (Finding 10, R. 21.) Bard says this was error, raising issues about each representative job identified by the vocational expert. (Statement of Errors at 8-10.)

**A. Step 2**

The Administrative Law Judge found that Bard's depression, anxiety, and mood complaints did not meet the durational and continuity requirements of the Act at the time of his decision. He found that Bard exhibited some symptoms of depression in January, May, June, and July 2007 and was treated with a Lexapro prescription. According to the Administrative Law Judge there was no evidence of depression subsequent to July 2007, because Bard did not exhibit depression in her subsequent office visits in February 2008 or in May 2008. (R. 17.) Bard flags an April 2008 report of an office visit in which a neuro/psychiatric note states a positive indication for depression. (R. 297.) The record reflects that Bard experienced periods of post partum depression in connection with the birth of her children and also depression arising from child-rearing responsibilities and other household stressors after her second child was born in 2007. (R. 233-34, 237, 244.) After an apparent hiatus of any significant depressive episode, Bard went to Sebasticook Family Doctors in August of 2008 depressed about marital issues. (R.

3

at 288.) Laurie Mahar, PMHNP, diagnosed anxiety disorder (not otherwise specified) and not depression, noting only "current symptoms of depression." (R. 290.) The Administrative Law Judge found: "If the claimant suffered from clinical depression during any portion of the period of time here in issue, the clinical data does not establish that the claimant suffered from any depressive disorder meeting the continuity and durational criteria set out above." (R. 17.)

As for anxiety, the Administrative Law Judge found that Bard failed to offer any acceptable medical source evidence in support of an anxiety disorder, specifically rejecting the anxiety disorder diagnosis offered by PMHNP Mahar because Mahar is not an acceptable medical source who can introduce a new diagnosis for social security purposes. (R. 18.) The Administrative Law Judge stated: "The claimant does not suffer from an anxiety disorder. In fact, she has been observed to exhibit anxiety on only one occasion during the period of time here in issue, notwithstanding her complaints of anxiety at other times." (R. 18.) Bard says this was error and cites the hearing testimony of Dr. Ira Hymoff, a psychologist. (Statement of Errors at 3.) Dr. Hymoff testified that, with respect to anxiety, he did not "really have anything else to go on other than the evaluation from the nurse practitioner who felt that [anxiety] was quite more severe." (R. 329.) He further stated that he "can't say how severe that is" and "would only have to go with mild to moderate." (R. 330.) Dr. Hymoff's equivocal testimony does not weigh against the Administrative Law Judge's finding.

The Administrative Law Judge's Step 2 finding concerning the duration and continuity of any anxiety disorder or depression/affective disorder is supported by substantial evidence. In a psychological review conducted January 11, 2008, by Dr. Donna Gates on behalf of the Disability Determination Services (DDS), Dr. Gates reported that Bard presented with no anxiety or depressive features (R. 256) and diagnosed no axis I psychiatric condition (R. 258). Another

4

DDS consulting physician, Dr. David Houston, completed a Psychiatric Review Technique on February 13, 2008, and found no affective disorder or anxiety related disorder and also pointed to Dr. Gates's report as evidence of a presentation with "NO clinically signif mental hlth d/o." (R. 272.) These records provide substantial evidence of a lack of continuity between Bard's 2007 and 2008 presentations for anxiety and depression. Bard has failed to demonstrate an additional mental impairment that meets the durational requirement of the Act.[2]

Bard also argues that Social Security Ruling (SSR) 82-52 required the Administrative Law Judge to make more detailed findings about onset dates and restoration of function dates. (Statement of Errors at 2.) The Ruling requires different things in different circumstances. Bard's statement of errors does not address which provision of the Ruling she is relying on. Assuming that the denial here is for insufficient duration based on insufficient severity to prevent substantial gainful activity (SGA), the Ruling requires the adjudicator to "state clearly in the denial rationale" that "there was . . . sufficient restoration of function so that in spite of significant remaining limitations the individual should be able to do past relevant work or otherwise engage in SGA." The Administrative Law Judge's decision satisfies this requirement because he notes that Dr. Gates found no significant mental health disorder in January 2008. However, the Ruling also provides that in this kind of scenario "a thorough documentation,

---

[2] Bard also mentions a contrary finding by primary care physician Michael MacDonald, M.D., Ph.D., but does not offer a record citation. I am aware that Dr. MacDonald identified an episode of anxiety and a "history" of anxiety in June 2007 (R. 230, 233), but the Gates and Houston opinions sever that 2007 note from NP Mahar's 2008 note.
   Bard also faults the Administrative Law Judge for allegedly relying on Bard's Function and Disability Report to support his Step 2 findings. (Statement of Errors at 4.) It is true that the Administrative Law Judge made numerous references to this non-medical evidence under his finding associated with Step 2 of the process, but I see no error because the Administrative Law Judge makes it plain that he is simply cataloguing Bard's subjective complaints. (R. 13.)

5

evaluation, and rationalization of the claimant's RFC, work history, and vocational potential will be necessary." These are Step 4 and Step 5 considerations.

**B.  Step 3**

Impairments identified as "severe" at Step 2 are measured at Step 3 against the Commissioner's Listing of Impairments to determine if they are severe enough to automatically qualify for disability benefits. 20 C.F.R. § 416.920(a)(4)(iii), (d); see also Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (describing satisfaction of a listing as calling for a conclusive presumption of a disabling impairment). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

The dispute at Step 3 concerns an issue of whether Bard meets Listing 12.05 for Mental Retardation. Listing 12.05 can be met in alternative ways. Bard argues that she meets the requirements of 12.05(C).

> 12.05 Mental retardation:  Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period;  i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A.  Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>
> Or
>
> B.  A valid verbal, performance, or full scale IQ of 59 or less;
>
> Or

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
>
> Or
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or
>
> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
>
> 4. Repeated episodes of decompensation, each of extended duration.

Listing of Impairments, Appendix 1 to 20 C.F.R. Part 404, Subpart P ("Listing") § 12.05.

The January 2008 psychological review conducted by Dr. Gates included an IQ assessment. The Wechsler Adult Intelligence Scale-III ("WAIS") test administered with this assessment resulted in a verbal IQ of 73, a performance IQ of 72, and a full scale IQ of 70. (R. 257.) However, Dr. Gates opined that Bard "exhibited low persistence and likely could have scored higher on many items as [sic] she exerted herself in a more complete way." According to Dr. Gates: "The current test results are believed to be an under-representation of her . . . intellectual ability." (R. 257.) A 1999 evaluation performed when Bard was 15 resulted in a verbal IQ score of 70, performance IQ of 84, and a full scale IQ of 75. (R. 125.) The Listing of Impairments indicates that, "where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05." Listing § 12.00(D)(6). In other words, the Listing makes the 2008 full scale score of 70 relevant for purposes of the Mental Retardation Listing.

7

Bard argues that she meets Listing 12.05(C). I assume for purposes of this recommendation that the 70 IQ is valid and satisfies the first element of this Listing, notwithstanding the Administrative Law Judge's decision to credit Dr. Gate's opinion that Bard could have applied herself more and achieved a higher score.[3] The question then becomes whether the second element is met. The second element requires that Bard have another physical or mental impairment "imposing an additional and significant work-related limitation of function." Listing § 12.05(C). This harkens back to Step 2, where the Administrative Law Judge found no additional "severe" impairment that would satisfy the duration and continuity requirement. I have found that the Administrative Law Judge's Step 2 determination is based on evidence that a reasonable mind might accept as adequate to support a finding, referring to Dr. Gates's Psychological Review (Ex. 6F) and Dr. Houston's Psychiatric Review Technique ("PRT") (Ex. 7F). Even Dr. Hymoff indicated at the hearing that the evidence in support of any underlying anxiety/depressive disorder was not clear and could not readily be regarded as rounding out Listing 12.05. (R. 335, 337.)

## C.  Step 4 / Residual Functional Capacity

At Step 4 of the sequential evaluation process the Commissioner evaluates the claimant's residual functional capacity (RFC), as well as the claimant's past relevant work. If the claimant's RFC is compatible with his or her past relevant work, the claimant will be found "not disabled." 20 C.F.R. § 416.920(a)(4)(iv). At Step 4 the burden of proof rests with the claimant to

---

[3] The Listing indicates that a test administrator's narrative report may call the validity of a score into question or otherwise indicate that an IQ score is inconsistent with the degree of functional limitation. Listing § 12.00(D)(6)(a). Consulting experts subsequent to Dr. Gates relied on her assessment that Bard could have scored higher and they so indicated in the context of reviews that called for consideration of Listing 12.05. (R. 264, 272 (Houston) & 278, 286 (Knox).)

demonstrate that his residual functional capacity does not enable him to engage in his past relevant work. Yuckert, 482 U.S. at 146 n.5; 20 C.F.R. §§ 404.1520(f), 416.920(f). Beyond proving that his or her RFC is incompatible with past relevant work, the claimant bears the burden of proving the limitations that factor into the Commissioner's residual functional capacity finding. 20 C.F.R. § 416.960(c)(2); Clarification of Rules Involving Residual Functional Capacity Assessments, 68 Fed. Reg. 51,153, 51,157 (Aug. 26, 2003). This is both a burden of production and a burden of persuasion and it remains with the claimant through Step 4, where the claimant must demonstrate an inability to perform his or her past relevant work, if any. 68 Fed. Reg. 51,153, 51,155.

The Administrative Law Judge found that Bard could engage in a full range of work at all exertional levels, subject to nonexertional limitations of simple (one- or two-step) routine, repetitive tasks, only simple decisions, few work place changes and not fast-paced production environment. Bard assigns error to the Step 4 finding, saying that the Administrative Law Judge failed to adequately account for Dr. Hymoff's assessment that Bard would have marked difficulties maintaining concentration, persistence, and pace based on her reduced intellectual functioning. (Statement of Errors at 7, citing R. 331.) Dr. Hymoff testified at the hearing that Bard's learning disability/borderline intellectual functioning (as a set) would impose moderate difficulties in terms of activities of daily living and maintaining social functioning and "probably" marked difficulties with respect to maintaining concentration, persistence, and pace, with insufficient indicia of any episode of decompensation. (R. 331.)

Technically, Dr. Hymoff's opinion about the B criteria is testimony that pertains to Steps 2 and 3 rather than Step 4. Although Dr. Hymoff opined that Bard's achievement tests reflect "pretty significant" functional limitations, even if a listing is not satisfied (R. 328), Dr. Hymoff

9

did not offer an opinion concerning Bard's residual functional capacity, but was making a case for Listing 12.05. The Administrative Law Judge found in his Step 3 finding that Bard's level of daily functioning, including activities like child-rearing, independently running errands, and keeping up the home, is inconsistent with a marked deficit in concentration, persistence, and pace. (R. 19.) He further found: "*no more than a moderate* deficit in the claimant's concentration, persistence, and pace." (R. 19 (emphasis added.) He went on from there and made an RFC assessment for borderline intellectual functioning, but the record is void of any expert assessment of Bard's mental residual functional capacity.[4] Assuming for the sake of argument that the Administrative Law Judge has offered a legitimate basis for rejecting Dr. Hymoff evaluation of marked difficulties with concentration, persistence, and pace,[5] there is no expert opinion to fall back on in support of an RFC assessment. The Administrative Law Judge nevertheless posited: "The claimant's only established impairment that meets the applicable continuity and durational criteria is borderline intellectual functioning. Essentially all of her subjective allegations that could reasonably flow from this impairment are accounted for in the residual functional capacity assessment set out above." (R.20.)

The Administrative Law Judge's discussion is too telegraphic to satisfy the regulatory standards. They reflect that the Commissioner will adequately explain the basis for an

---

[4] Dr. David R. Houston, Ph. D., performed a Psychiatric Review Technique of Bard's "organic mental disorder"/learning disability and assessed it as non-severe. (Ex. 7F, R. 260.) A finding that a mental disorder is non-severe generally means that a mental residual functional capacity assessment is not called for. Here, however, the Administrative Law Judge found borderline intellectual functioning to be severe and offered his own RFC assessment.

[5] This is not purely an academic question, since the vocational expert testified for purposes of Step 5 that a marked difficulty maintaining concentration, persistence, and pace would preclude a finding of other substantial gainful work for Bard. (R. 342-43.) Also, it is unclear whether the Administrative Law Judge relied on a competing expert opinion since he failed to cite one. Dr. Gates indicated that Bard should not have difficulty returning to her past work (R. 258), but the vocational expert questioned whether Bard's past work would qualify as substantial gainful activity, being part-time (R. 338).

10

assessment as to the severity of a claimant's mental impairments.  Listing § 12.00(C), (D).  This is sometimes referred to as "document[ing] application of the technique," 20 C.F.R. § 416.920a(e).  Conflicts in expert opinion should also be addressed in more than conclusory language.  20 C.F.R. § 416.927.  Additionally, non-severe limitations are not necessarily immaterial to the RFC determination.  20 C.F.R. § 416.945(c), (e).  Finally, and most significantly, an adjudicator's RFC assessment must be supported by substantial evidence.  Unless the degree of limitation would be obvious to a layperson as a matter of common sense, an administrative law judge lacks the qualifications to determine RFC based on raw medical evidence and must rely on the findings of a medical expert.  <u>Gordils v. Sec'y of Health & Human Servs.</u>, 921 F.2d 327, 329 (1st Cir. 1990).  Here, the Administrative Law Judge charted his own course and, in doing so, judged matters that are ordinarily entrusted to experts, without even referencing the findings of consulting experts to provide a rationale for his independent decision.  Perhaps a common sense approach could work in this case, but a common sense explanation is not provided.  The Administrative Law Judge's Step 4 RFC finding does not even expressly draw on the opinion of Dr. Gates or Dr. Houston (neither of whom assessed what functional restriction might be associated with a moderate deficit in concentration, persistence, and pace, in any event).

It may be said that the Commissioner does not have any burden to prove the components of a claimant's residual functional capacity.  However, the Commissioner has assumed some responsibility to develop the record, "including arranging for a consultative examination(s) if necessary," 20 C.F.R. § 416.945(a)(3), and the Commissioner must base his subsequent Step 5 finding on substantial evidence.  <u>Staples v. Astrue</u>, Civ. No. 09-440-P-S, 2010 U.S. Dist. Lexis 72809, *15-18, 2010 WL 2680527, *5-7 (D. Me. June 29, 2010) (Rich, Mag. J., Report and

Recommended Decision, aff'd without obj.) (analyzing and rejecting an assertion by the Commissioner that an evidentiary gap related to RFC is inherently a burden of proof failure on the part of the claimant that does not warrant remand, and reasoning that the absence of substantial evidence in support of a Step 4 RFC finding undermines the Commissioner's ability to carry his Step 5 burden). Here, the Administrative Law Judge needs to either refer the file for expert assessment of Bard's mental residual functional capacity or he needs to elaborate on how the record, including expert medical opinion, renders his residual functional capacity assessment obvious.

**D.      Step 5**

The issues at Step 5 concern four representative jobs that the Administrative Law Judge found Bard could perform.[6] There are different objections raised as to different jobs, including a dispute over the materiality of a distinction between "specific vocational preparation" level 1 and level 2 and the potential literacy demands and theoretical stressors of particular jobs. I do not address these challenges because Step 5 of the sequential evaluation process cannot be fully evaluated until Step 4/RFC is sorted out.

**Conclusion**

For reasons set forth above, I RECOMMEND that the Commissioner's decision be VACATED and REMANDED for further proceedings with respect to Jamie L. Bard's Title XVI claim.

---

[6] The Administrative Law Judge did not make a finding as to the particular jobs in question, but simply found that the vocational expert's testimony demonstrated that Bard could make a transition to other work existing in significant numbers in the national economy.

**NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

August 12, 2010